UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO BANK N.A.,<br><br>             Plaintiff,<br><br>      v.<br><br>H&R TRANSPORT, *et al.*,<br><br>             Defendants. | Case No.  1:24-cv-00710-KES-EPG<br><br>FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART<br><br>(ECF No. 11)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Plaintiff BMO Bank N.A. ("Plaintiff") moves for default judgment against Defendants H&R Transport ("H&R") and Harmandeep Singh Gill ("Gill") on state law breach of contract claims. The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(19). For the reasons given below, the Court will recommend that Plaintiff's motion for default judgment be granted in part.

**I.      BACKGROUND**

Plaintiff is a national banking association. (ECF No. 1 at 2). Defendant H&R Transport is a commercial trucking business owned by Defendant Gill. (*Id.*). Plaintiff entered into a series of loan and security agreements (collectively, "the Agreements") with H&R Transport in April 2022 ("Agreement 8001"), June 2022 ("Agreement 2001"), and December 2022 ("Agreement

1

1001" and "Agreement 7001") where Plaintiff agreed to finance H&R's purchase of vehicles.[1] (*Id.* at 2-4). In turn, H&R agreed to pay Plaintiff pursuant to the terms of the Agreements.[2] (*Id.* at 3-4).

In connection with each Agreement, Gill executed a continuing guaranty where Singh guaranteed the performance of H&R's liabilities to Plaintiff. (*Id.*). Pursuant to the Agreements, H&R granted Plaintiff a first-priority security interest in the vehicles. (*Id.* at 4). Defendants defaulted under the terms of the Agreements and each corresponding guaranty by failing to pay the amount due to Plaintiff on December 1, 2023, pursuant to Agreement 7001, and by failing to pay the amount due to Plaintiff on January 1, 2023 pursuant to the remaining Agreements. (*Id.* at 5). Pursuant to the terms of the Agreements, the entire amount due accelerated on May 29, 2024. (*Id.*). Further, Defendants are obligated to pay a default interest rate on all unpaid amounts, late charges, all expenses in retaking, holding, preparing, and selling the vehicles, and other fees described in the Agreements, as well as attorney's fees and costs incurred by Plaintiff in any lawsuit to enforce its rights under the Agreements. (*Id.* at 6).

Plaintiff sent a notice of default and acceleration to Defendants, with a demand for payment and surrender of the vehicles, on June 6, 2024. (*Id.*). However, Defendants failed to pay the amount owed under the Agreements. (*Id.* at 7).

On June 18, 2024, Plaintiff filed its Complaint, pleading five "claims" against Defendants: (1) injunctive relief enjoining Defendants from continued use of the remaining unrecovered vehicle, ordering Defendants to advise Plaintiff of the location of the vehicles, and ordering Defendants to surrender the vehicle; (2) specific performance of Defendants' obligations under the Agreements (i.e. that Defendants return the vehicles); (3) claim and delivery of the unrecovered vehicles; (4) breach of contract and damages against H&R Transport; and (5) breach

---

[1] Plaintiff agreed to finance H&R's purchase of the following vehicles: 2023 Great Dane Reefer (serial # last four digits -9607) pursuant to Agreement 8001; 2023 Utility Refrigerated Vans (VIN # -2727) pursuant to Agreement 2001; 2023 Great Dane Refrigerated Vans (Serial # -3511) pursuant to Agreement 1001; and a 2023 Kenworth T680-Series (VIN # -3657) pursuant to Agreement 7001. (ECF No. 1 at 4).

[2] H&R agreed to pay Plaintiff the following amounts: $129,505.20, including interest, pursuant to Agreement 8001; $134,862.00, including interest pursuant to Agreement 2001; $148,407.00, including interest pursuant to Agreement 1001; $272,902.32, including interest pursuant to Agreement 7001. (ECF No. 1 at 14, 21, 28, 35; *see also* ECF No. 12 at 4-5).

of contract and damages against Gill. (*Id.* at 7-11). Plaintiff's complaint seeks judgment against Gill in the amount due under the Guaranties, including all unpaid amounts owed, late fees on all unpaid amounts, interest, and attorney's fees and costs. (*Id.* at 10-11). At the time of filing the complaint, Plaintiff had not recovered any of the vehicles. (*Id.* at 7).

On June 29, 2023, Plaintiff personally served copies of the summons and on H&R Transport and Gill. (ECF Nos. 6, 7, 23). After Defendants failed to respond to the Complaint, Plaintiff obtained a Clerk's Entry of Default under Federal Rule of Civil Procedure 55(a) against Defendants. (ECF No. 9).

On September 18, 2024, Plaintiff moved for default judgment, requesting that "Judgment be entered in [its] favor and against Defendants directing the Defendants to specifically perform their obligations under the Agreements, and to return and/or allow Plaintiff to take possession of the Vehicles as listed above." (ECF No. 11 at 11). Plaintiff calculates that the total amount owed from the Agreements is $480,865.04. (*Id.* at 10). Plaintiff also asserts that it is owed additional interest after August 22, 2024 (the date it filed the motion) as follows: $38.22 per day for Agreement 8001, $38.65 per day for Agreement 2001, $48.76 per day for Agreement 1001, and $96.22 per day for Agreement 7001. (*Id.* at 9-10). Plaintiff requests attorney's fees in the amount of $3,347.50 and costs for this lawsuit in the amount of $557.14.[3] (*Id.* at 10). No Defendant has responded to the motion, appeared, or otherwise participated in this case.

In the notice for the motion for default judgment, Plaintiff says: "Defendants were sub-served pursuant to Cal. Civ. Proc. Code § 415.20(a) on June 29, 2024, by leaving a copy of the summons and complaint at their address located at 6021 East Bellaire Way, Fresno, California 93727, to defendant Harmandeep Singh Gill, a person at least 18 years of age, who was informed of the contents thereof." (*Id.* at 2). In the documents entitled "Proof of Service" that are attached to the motion, Plaintiff checks the box for service done by mail (CCP §1013(a)&(b)). (*Id.* at 15; ECF No. 11-1 at 3).

On December 19, 2024, the Court held oral argument on the motion for default judgment. (ECF No. 21). The Court ordered Plaintiff to provide a supplement to its motion, specifically

---

[3] Plaintiff states that the Complaint court filing fee cost $405.00; service of process for H&R Transport cost $100.64; and service of process for Gill cost $51.50. (ECF No. 11 at 10).

1  addressing the issue of service of the Complaint on Defendants.  (ECF No. 22).

2        On January 24, 2025, Plaintiff filed a supplemental brief stating that it "inadvertently used the incorrect code section which should have been Cal. Civ. Proc. Code § 415.10 since Defendants were both personally served."  (ECF No. 23 at 2).

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 55 permits the Court to enter a default judgment following entry of default by the clerk when a party has failed to plead or otherwise defend a case.  Fed. R. Civ. P. 55(b)(2).  Whether to enter a default judgment lies within the Court's discretion.  *Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986).  Factors (*i.e.*, the *Eitel* factors) that may be considered in determining whether to enter default judgment include the following:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted).  Before awarding a default judgment against a defendant, the Court must determine the adequacy of service of process and the Court's jurisdiction over the subject matter and the parties.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

## III.    DISCUSSION

The Court first addresses its subject matter jurisdiction for entering default judgment and personal jurisdiction over Defendants.  The Court will also determine whether service of process on Defendants was adequate.  The Court will then examine the *Eitel* factors and the terms of the proposed judgment.

\\\

\\\

**A. Jurisdiction and Service of Process**

1. Subject Matter Jurisdiction

Plaintiff's complaint alleges that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). (ECF No. 1 at 1-2).

Federal courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). In addition to satisfying the minimum amount in controversy, proper diversity jurisdiction requires that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Here, the amount Plaintiff seeks is greater than $75,000. (ECF No. 1 at 1-2; *see id.* at 5-7). Therefore, the minimum amount in controversy required for diversity jurisdiction is satisfied.

Plaintiff and Defendants are also diverse in citizenship. National banking associations are "deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. For purposes of diversity jurisdiction, a bank is "located" in the state designated in its articles of association as its main office. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). The Ninth Circuit has held that under § 1348 a national banking association is a citizen only of the state in which its main office is located. *Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 709 (9th Cir. 2014). In the complaint, Plaintiff states that its main office designated in its articles of association is located in Chicago, Illinois. (ECF No. 1 at 2). Therefore, for purposes of diversity jurisdiction, Plaintiff is located in Illinois and is a citizen of Illinois. *See Wachovia Bank*, 546 U.S. at 318.

Individuals are deemed to be citizens of the state in which they are domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff's complaint alleges that Gill is a "citizen of the State of California residing at 6021 East Bellaire Way, Fresno, California 93727." (ECF No. 1 at 2). With nothing to the contrary from Gill, the Court determines that Gill is a citizen of California.

A corporation is "a citizen of any State in which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Plaintiff's complaint

5

alleges that H&R Transport is "a corporation organized under the laws of the State of California with its principal place of business located at 6021 East Bellaire Way, Fresno, California 93727." (ECF No. 1 at 2). Therefore, the Court determines that H&R is a California corporation.

Thus, Plaintiff has established complete diversity between the parties named in the lawsuit and the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

        2. <u>Personal Jurisdiction</u>

"A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A plaintiff must make a prima facie showing of personal jurisdiction by producing "facts that if true would support jurisdiction over the defendant." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1129 (9th Cir.2003) (citation omitted).

"Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general [subject matter] jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(A). "Due process permits a court to exercise personal jurisdiction over a defendant only when the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Briskin v. Shopify, Inc.*, 87 F.4th 404, 411 (9th Cir. 2023) (internal citations and quotation marks omitted); *see id.*, at 411-412 (providing a general overview of the different types of personal jurisdiction).

Here, the Court finds that it has general jurisdiction over Defendants. *Briskin*, 87 F.4th at 411 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)) (internal quotation marks omitted) ("General jurisdiction extends to any and all claims brought against a defendant, but is only appropriate whether a defendant is essentially at home in the State."). As discussed above, Plaintiff adequately alleges that Gill is domiciled in California, and that H&R is a California corporation with its principal place of business in California. (ECF No. 1 at 2). Accordingly, Plaintiff has made a prima facie showing that Defendants are subject to general jurisdiction in California. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domestic domicile[.]"); *Briskin*, 87 F.4th 404 at 411 (citing *Daimler AG v. Bauman*,

571 U.S. 117, 137 (2014) ("A corporate defendant is considered at home in its state of incorporation and the place where it maintains its principal place of business."). And as discussed below, Defendants were both served with summons. Accordingly, the Court has personal jurisdiction over Defendants. Fed. R. Civ. P. 4(k)(A).

       3.  Service of Process

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Federal Rule of Civil Procedure 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

Federal Rule of Civil Procedure 4 sets forth the requirements for service within a judicial district of the United States. Under Rule 4(e), an individual may be served by: (1) following the state law for service of summons in the state where the district court is located or where service is made; (2) delivering a copy of the summons and the complaint to that person personally; (3) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (4) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(1)-(2).

Under Rule 4(h), a corporation may be served: (1) in the manner prescribed by Rule 4(e)(1) (i.e. following the state law for service of summons in the state where the district court is located or where service is made); or (2) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or an agent authorized to receive service of process. Fed. R. Civ. P. 4(h)(1)(A)–(B).

Here, Plaintiff submits a sworn declaration of service of process that indicate that Gill was personally served a copy of the summons and complaint in compliance with California law. (ECF No. 8-1; ECF No. 7 at 1-2). The declaration also indicates that H&R was personally served a copy of the summons and complaint through service on its registered agent, Gill. ((ECF No. 8-1; ECF Nos. 6 at 1-2). Additionally, Plaintiff further attests that Defendants were personally served in its supplemental brief. (ECF No. 23 at 2). Accordingly, the Court finds that Plaintiff has complied with Rule 4. *See S.E.C.*, 509 F.3d at 1167 (plaintiff seeking default judgment makes prima facie showing of valid service by providing the process server's sworn statements that service was performed on defendant).

**B.** *Eitel* **Factors**

    1. <u>Prejudice to Plaintiff</u>

Turning to the *Eitel* factors, Plaintiff argues that it will be prejudiced if judgment is not entered because "Defendants refused to participate in the action and has made default judgment the sole avenue of relief available to Plaintiff." (ECF No. 11 at 12).

The Court agrees that Plaintiff will be prejudiced if a default judgment is not granted. If default judgment is not entered, Plaintiff will effectively be denied relief, as it is apparent that Defendants will not defend this action, and the complaint alleges that Defendants are in continuous default of the unpaid amounts owed to Plaintiff under the terms of the Agreements and each corresponding guaranty. Accordingly, this *Eitel* factor weighs in favor of granting default judgment.

    2. <u>Substantive Merits and Sufficiency of Complaint</u>

As to the second and third *Eitel* factors, Plaintiff argues that the elements of breach of contract are met: Plaintiff performed all conditions and obligations under the Agreements, Defendants breached by defaulting on their payment obligations, and Plaintiff sustained damages because Defendants' defaults on their payment obligations have resulted in the entire amount of the unpaid agreements becoming immediately and payable, with interest. (ECF No. 11 at 12-13). Plaintiff also argues that "the allegations in the Complaint, taken as true, sufficiently state a meritorious breach of contract claim against Defendants." (*Id.* at 11). Plaintiff specifies that it "has established the existence of a contract, performance on Plaintiff's part, the Defendant's breach, and damages caused to Plaintiff by said breach." (*Id.*).

For the second and third *Eitel* factors, the Court weighs the merits of the substantive claims and the sufficiency of the operative complaint. *Eitel*, 782 F.2d at 1471-72. Plaintiff asserts five types of causes of action in the complaint: (1) injunctive relief; (2) specific performance; (3) claim and delivery; (4) breach of contract against H&R; (5) breach of contract against Gill. (ECF No. 1 at 7-11). However, only breach of contract is an actual cause of action for relief. The other three causes of action are forms of relief. *See Roberts v. Los Angeles Cty. Bar Assn.*, 105 Cal. App. 4th 604, 618 (2003) (injunctive relief is an equitable remedy and not a cause of action); *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. Cal.*, 813

8

F.3d 1155, 1167 (9th Cir. 2015) ("Specific performance is a remedy associated with breach of contract.") (citing the Restatement (Second) of Contracts § 357); *Adler v. Taylor*, No. CV 04-8472-RGK(FMOX), 2005 WL 4658511, at *3 (C.D. Cal. Feb. 2, 2005) (claim and delivery is not a separate action but a remedy to return specific property and to award incidental damages); *Ananda Church of Self-Realization v. Mass. Bay Ins. Co.*, 95 Cal. App. 4th 1273, 1276 (2002) ("[C]laim and delivery denominates a remedy rather than a tort.").

As Plaintiff's motion for default judgment only addresses Plaintiff's claims for breach of contract and money damages against Defendants, the Court will determine whether Plaintiff has sufficiently alleged such claims. (*See* ECF No. 11). Additionally, the Court notes that Plaintiff's motion for default judgment argues that there was a breach of contract under California law, but the parties' contract contains a choice of law provision for Illinois law. (*Compare* ECF No. 1 at 17, 24, 31, 38 *with* ECF No. 11). Nevertheless, the Court need not resolve this issue because both California and Illinois law have, essentially, the same fundamental elements for breach of contract.

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 814 N.E.2d 960, 967, 286 Ill. Dec. 734 (Ill. App. Ct. 2004)). Similarly, under California law, the elements of a breach of contract claim are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman, et al*, 51 Cal.4th 811, 821 (2011) (internal citation omitted).

The Court finds that Plaintiff has alleged sufficient facts for a claim for breach of contract against Defendants under either California or Illinois law. As alleged in Plaintiff's complaint, Plaintiff and H&R entered into a series of contracts (Agreements) where Plaintiff agreed to finance H&R's purchase of the vehicles, and H&R granted Plaintiff a first-priority security interest in the vehicles and agreed to repay the loan pursuant to the terms of the Agreements. (ECF No. 1 at 2-7). In connection with the Agreements between Plaintiff and H&R, Gill

9

executed a continuing guaranty for each agreement where he agreed to the full and timely performance of H&R's present and future liabilities to Plaintiff. (*Id.* at 4). As alleged in the complaint, Defendants defaulted under the terms of Agreements by failing to make timely payments, specifically the payments due on Agreement 7001 in December 2023, then all remaining payments thereafter. (*Id.* at 5). Plaintiff performed its obligations under the Agreement, but Defendants failed to cure the default. (*Id.* at 9). Consequently, Defendants owe Plaintiff the unpaid amount, interest, late fees, costs of collection, attorney's fees and other costs as provided by the Agreements. (*Id.* at 11). Thus, Defendants' breach of the Agreements resulted in damages to Plaintiff. Therefore, accepting all factual allegations in the complaint as true, Plaintiff has adequately demonstrated a substantial likelihood of success on the merits of its breach of contract claims against Defendants.

Accordingly, the Court finds that the second and third *Eitel* factors weigh in favor of granting default judgment.

### 3. Sum of Money in Relation to Seriousness of Conduct

Next, the Court considers the sum of money at stake in the action, with a lower sum weighing in favor of default judgment.

Here, Plaintiff requests the amount of money owed under the terms of the contracts, including the unpaid principal amount, interest, late fees, repossession fees, and other fees, i.e., $480,865.04. (ECF No. 11 at 10). Plaintiff also seeks litigation costs in the amount of $557.14 and attorney's fees in the amount of $3,347.50. (*Id.*) These requests are mostly supported and corroborated by Plaintiff's evidence as discussed in detail below. In total, Plaintiff seeks $484,769.68, plus the daily interest amount accrued under the Agreements. (*Id.* at 14).

The Court does not find this amount to be excessive as it is based upon Defendants' obligations under the terms of the Agreement. Accordingly, the Court finds that the fourth *Eitel* factor weighs in favor of granting default judgment.

### 4. Possibility of Dispute

No genuine issue of material fact is likely to exist. Defendants have not responded to the complaint, and Plaintiff has adequately alleged a breach of contract claim against Defendants under California law. Accordingly, the Court finds that the fifth *Eitel* factor weighs in favor of

granting default judgment.

### 5. Whether the Default was Due to Excusable Neglect

The Court finds that the default in this matter was not due to excusable neglect. Defendants were served with notice of the complaint and failed to respond. Accordingly, the Court finds that the sixth *Eitel* factor weighs in favor of granting default judgment.

### 6. Policy Favoring Decision on the Merits

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "the policy favoring decisions on the merit does not preclude entering default judgment" because Defendants' failure to appear has made a decision on the merits impossible. *Arroyo v. J.S.T., LLC*, Case No. 1:18-cv-01682-DAD-SAB, 2019 U.S. Dist. LEXIS 172255, at *34, *35 (E.D. Cal. Oct. 3, 2019). Accordingly, the Court finds that the seventh *Eitel* factor does not preclude default judgment.

### 7. Conclusion

In light of the discussion of all the *Eitel* factors, the Court recommends that default judgment be entered against Defendants.

**C. Terms of Judgment**

Plaintiff's complaint seeks the contractual money damages, including attorney's fees, costs of collection, interest, and late fees on all unpaid amounts due, as provided by the Agreements, as well as an order permitting Plaintiff to retake possession of the unrecovered vehicle. (ECF No. 1 at 4-14). The Agreements entered by the parties provides as follows:

> **5.2 Remedies.** Upon the occurrence of an event of default . . . Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default . . . (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof . . . Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. Debtor agrees that Lender may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons to Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all

11

> other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of Equipment after default.
>
> . . .
>
> **5.3 Acceleration Interest.** Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

(ECF No. 1 at 16, 23, 30, 37). Pursuant to each corresponding guaranty, Gill agreed to pay on demand all indebtedness owed by H&R, including all losses, costs and attorney's fees. (ECF No. 1 at 42-45).

1. Damages

Plaintiff only seeks default judgment and relief as to its breach of contract claims against Defendants. A plaintiff must prove all damages sought in the complaint, and "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]." Fed. R. Civ. P. 54(c). The prevailing party in a breach of contract claim is entitled to recover "as nearly as possible the equivalent of the benefits of performance." *Lisec v. United Airlines, Inc.*, 10 Cal. App. 4th 1500, 1503 (1992). In determining the appropriate sum for a default judgment, the court may rely on the affidavits or documentary evidence submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2); *see also Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citations omitted) ("Plaintiff's burden in 'proving up' damages is relatively lenient."). "Where damages are liquidated (*i.e.*, capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing." *Microsoft Corp. v. Nop*, 549 F.Supp.2d 1233, 1235 (E.D. Cal. 2008) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323–24 (7th Cir. 1983)).

Regarding Agreement 8001, Plaintiff's motion seeks the following monetary damages as provided by the contract: 1) Remaining Principal Amount: $76,439.85 and 2) Interest and Remaining Fees: $7,684.87. (ECF No. 11 at 9). In total, Plaintiff seeks $84,124.72 in contractual damages. (*Id.*). Plaintiff also seeks the daily interest amount accrued under the Agreement 8001, i.e., $38.22 per day, for every day after August 22, 2024. (*Id.*).

Regarding Agreement 2001, Plaintiff's motion seeks the following monetary damages as

provided by the contract: 1) Principal Amount: $77,113.70 and 2) Interest and Remaining Fees (including repossession costs): $9,115.13. (*Id.*). In total, Plaintiff seeks $86,228.83 in contractual damages. (*Id.*). Plaintiff also seeks the daily interest amount accrued under Agreement 2001, i.e., $38.56 per day, for every day after August 22, 2024. (*Id.*).

Regarding Agreement 1001, Plaintiff's motion seeks the following monetary damages as provided by the contract: 1) Principal Amount: $97,518.21 and 2) Interest and Fees: $9,898.43. (*Id.*). In total, Plaintiff seeks $107,416.64 in contractual damages. (*Id.*). Plaintiff also seeks the daily interest amount accrued under Agreement 1001, i.e., $48.76 per day, for every day after August 22, 2024. (*Id.*).

Regarding Agreement 7001, Plaintiff's motion seeks the following monetary damages as provided by the contract: 1) Principal Amount: $185,325.41 and 2) Interest and Fees: $17,769.44. (*Id.* at 9-10). In total, Plaintiff seeks $203,094.85 in contractual damages. (*Id.* at 10). Plaintiff also seeks the daily interest amount accrued under Agreement 7001, i.e., $92.66 per day, for every day after August 22, 2024. (*Id.*).

The principal amount, late charges and unpaid interest owed by Defendants under the agreements is supported by Plaintiff's supporting Declaration by litigation specialist, Bryan J. Schrepel, and the payoff statements drawn from Plaintiff's books and records submitted as an exhibit. (ECF No. 12 at 2, 8-9, 56, 58, 60, 62). As set forth in the Declaration, the Agreements provide that Defendants are obligated to pay interest on all unpaid amounts at the default rate of 18% per annum (or 1.5% per month) upon acceleration. (*Id.* at 6).

The Court finds that Plaintiff has provided sufficient proof of the damages amount through the Declaration from Plaintiff's litigation specialist and supporting documentation. Thus, Plaintiff is entitled to the amount of contractual damages requested, *see Microsoft Corp.*, 549 F.Supp.2d at 1235, and the Court recommends that Plaintiff be awarded $484,769.68 in monetary damages.

Moreover, Plaintiff is also entitled to prejudgment interest under California law. *See* Cal. Civ. Code § 3287(a) ("A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day . . . ."); *State of California*

*v. Continental Ins. Co.*, 15 Cal.App.5th 1017, 1038 (2017) (internal citations omitted) ("Under [§ 3287(a)], prejudgment interest is allowable where the amount due plaintiff is fixed by the terms of a contract…"). However, as the daily interest owed under the Agreement will continue to accrue up until the date when final judgment is entered, the Court will recommend that Plaintiff be awarded accrued interest until the entry of final judgment at the daily rates of (1) $38.22 for Agreement 8001 for every day after August 22, 2024; (2) $38.56 for Agreement 2001 for every day after August 22, 2024; (3) $48.76 for Agreement 1001 for every day after August 22, 2024; (4) $96.22 for Agreement 7001 for every day after August 22, 2024.[4]

   2. Attorneys' Fees and Costs

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). California Civil Procedure Code § 1021 provides that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." Further, "parties to actions or proceedings are entitled to their costs[.]" Cal. Civil Proc. Code § 1021.

Here, the terms of the Agreement provide that Plaintiff shall be entitled to reasonable attorneys' fees for costs incurred to enforce the contract. Thus, the Court finds that Plaintiff is entitled to attorneys' fees and costs under California law.

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group v. Drexler,* 22 Cal.4th 1084, 1095 (2000). "[W]hen determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *see also PLCM Group*, 22 Cal.4th at 1095 ("The reasonable hourly rate is that prevailing in the community for similar work."). "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The trial court is

---

[4] The amount of prejudgment interest accrued between the dates of acceleration, i.e., May 29, 2024, and August 22, 2024, is included in Plaintiff's calculation of the interest owed by Defendants as reflected in the payoff statements for each agreement. (*See* ECF No. 12 at 56, 58, 60, 62; *see also* ECF No. 11 at 6, 7).

given "broad authority to determine the amount of a reasonable fee." *PLCM Group*, 22 Cal.4th at 1095.

Here, Plaintiff's counsel, Ken I. Ito, seeks attorney's fees in the amount of $3,347.50 for work performed (including anticipated additional work) at his hourly rate of $325.00 per hour. (ECF No. 13 at 2-3). Plaintiff also seeks a total of $557.14 in costs, which consists of the filing fee and service of process. In support of the fee and cost request, Plaintiff submits a Declaration of litigation specialist Bryan Schrepel, a Declaration of Attorney Ito, timesheets, and itemized billing entries. (ECF Nos. 12, 13). Attorney Ito's Declaration states that he has 11 years of litigation experience with an emphasis in creditors' rights and business and commercial litigation. (ECF No. 13 at 3). The billing entries list the tasks performed in this case. (*Id.* at 5-9). Upon review, the Court does not see a total of Attorney Ito's hours work listed in the motion for default or Attorney Ito's Declaration. (*See* ECF Nos. 11, 13). However, the itemized bills attached to the Declaration note 2.10 hours (ECF No. 13 at 6) and 6.60 hours, for a total of 8.70 hours of work (ECF No. 13 at 9). Additionally, Attorney Ito's Declaration states that he anticipates billing an additional $975.50 for 3.0 hours of work spent completing the motion for default judgment, declaration, and proposed order. (*Id.* at 3). Therefore, the Court calculates that Attorney Ito's total number of hours as 11.7. (*See* ECF No. 13). The total amount of attorney's fees sought in this action is $3,347.50. (ECF No. 11 at 14).

The Court finds the requested hourly rate of $325 to be reasonable in light of the hourly rates awarded in the Eastern District. *See BMO Harris Bank N.A. v. Ronsher Trans*, No. 1:23-cv-00369-ADA-SAB, 2023 WL 4234665 at *10 (E.D. Cal. June 28, 2023) ("Hourly rates for attorney fees awarded in the Eastern District of California range from $200-$750, with hourly rates exceeding $600 reserved for attorneys who have been practicing approximately 30 years.") (citing cases). The Court notes that it previously approved an hourly rate of $275 for work performed by Attorney Ito in early 2023. *See BMO Harris Bank N.A. v. Ground Link Express* ("*Ground Link*"), No. 1:23-cv-00226-KES-EPG, 2023 WL 688146 at *10 (E.D. Cal. Feb. 20, 2024); *Ground Link*, 1:23-cv-00226-KES-EPG, ECF No. 15 at 5-6. The Court finds Attorney Ito's increased rate for work performed in late 2023 and early 2024 to be reasonable in light of Attorney Ito's eleven years of experience. *See Siafarikas v. Mercedez- Benz USA, LLC*, No. 2:20-

cv-01784-JAM-AC, 2022 WL 16926265, at *3 (E.D. Cal. Nov. 10, 2022) (approving the hourly rate of $250 for an attorney "who has practiced law for three years" and $500 for an attorney who had practiced law for 21 years).

Upon review, the Court also finds the total hours of time expended in this matter, as set forth in Attorney Ito's itemized billing entries and declaration, to be reasonable. Specifically, the Court notes that other courts in this district have awarded Attorney Ito fees ranging from $3,410.00 to $6,725.50 for his work on similar cases involving default judgment. *See BMO Harris Bank, N.A. v. Jasvinder Singh, et al.*, No. 1:23-cv-00067-JLT-BAM, ECF Nos. 13 14 (awarding Ito $6,725.50 in attorney's fees); *BMO Harris Bank N.A. v. Laddi Truck Lines, Inc.*, No. 1:23-cv-00070-ADA-HBK, ECF Nos. 13, 16 (awarding Ito $3,410.00 in attorney's fees); *BMO Harris Bank N.A. v. Ronsher Trans*, No. 1:23-cv-00369-ADA-SAB, ECF No. 12, 16 (awarding Ito $4,922.50 in attorney's fees). Therefore the Court finds that the total amount of attorney's fees sought here, $3,347.50, is reasonable.

Based on the foregoing, the Court recommends Plaintiff be granted total attorneys' fees of $3,347.50. The Court also recommends that Plaintiff be awarded $557.14 for the costs of litigation as permitted by the parties' agreement and supported by Plaintiff's submitted billing statements.

**IV.   CONCLUSION AND RECOMMENDATIONS**

For the reasons discussed above, Plaintiff is entitled to default judgment in most respects. Accordingly, IT IS RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 11) be GRANTED, in part, as specified below:
    a. Judgment be entered in favor of Plaintiff BMO Bank N.A. against Defendants H&R Transport and Harmandeep Singh Gill.
    b. Plaintiff be awarded $484,769.68 in monetary damages.
    c. Plaintiff be awarded the prejudgment interest accrued at the contracted daily rates of (1) $38.22 for Agreement 8001 for every day after August 22, 2024; (2) $38.56 for Agreement 2001 for every day after August 22, 2024; (3) $48.76 for Agreement 1001 for every day after August 22, 2024; (4) $96.22 for

     Agreement 7001 for every day after August 22, 2024

   d. Plaintiff be awarded $3,347.50 in attorneys' fees and $557.14 in costs.

2. Upon recovery and sale of the identified vehicles in a commercially reasonable manner, the money judgment entered be credited with the net sale proceeds of the vehicles.

3. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 11, 2025**    /s/ Erica P. Grosjean

                UNITED STATES MAGISTRATE JUDGE

17